UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| CHRISTOPHER L. BARRICK, | CASE NO. 4:21-CV-01278-SL |
| Plaintiff, | JUDGE SARA LIOI |
| vs. | MAGISTRATE JUDGE DARRELL A. CLAY |
| COMMISSIONER OF SOCIAL SECURITY, | **REPORT AND RECOMMENDATION** |
| Defendant. | |

## INTRODUCTION

Plaintiff Christopher L. Barrick filed a Complaint against the Commissioner of Social Security (Commissioner) seeking judicial review of the Commissioner's decision denying supplemental security income (SSI). (ECF #1). The District Court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). On July 1, 2021, pursuant to Local Rule 72.2, this matter was referred to me for preparation of a Report and Recommendation. (Non-document entry of July 1, 2021). Following review, and for the reasons stated below, I recommend the District Court **REVERSE** the Commissioner's decision and **REMAND** the case for additional proceedings consistent with this recommendation.

## PROCEDURAL BACKGROUND

Mr. Barrick filed for SSI alleging a disability onset date of April 12, 2019. (Tr. 54). His claims were denied initially and on reconsideration. (Tr. 54-72, 74-94). He then requested a

hearing before an Administrative Law Judge. (Tr. 109-11). Mr. Barrick (represented by counsel),

and a vocational expert (VE) testified at a hearing before the ALJ on July 28, 2020. (Tr. 33-53). On

August 5, 2020, the ALJ issued a written decision finding Mr. Barrick not disabled. (Tr. 9-32). The

Appeals Council denied Mr. Barrick's request for review, making the hearing decision the final

decision of the Commissioner. (Tr. 1-6; *see* 20 C.F.R. §§ 416.1455, 416.1481). Mr. Barrick timely

filed this action on July 1, 2021. (ECF #1).

Factual Background

## I.   Personal and Vocational Evidence

Mr. Barrick was 37 years old at the time of his alleged onset date, and 38 years old at the

time of the administrative hearing. (Tr. 54). Mr. Barrick completed high school. (Tr. 40). The ALJ

determined Mr. Barrick does not have past relevant work. (Tr. 46).

## II.   Relevant Medical Evidence

On June 4, 2019, Mr. Barrick attended an adult diagnostic mental health assessment with

Mary Butler, LPC, at Alternative Paths. (Tr. 793). Ms. Butler described Mr. Barrick as polite and

talkative. (*Id.*). He displayed an anxious mood, had persecutory delusions/paranoid thought

content, and showed fair insight and judgment, good memory, and fair concentration. (Tr. 803).

Mr. Barrick reported experiencing panic attacks two to three times a month. (Tr. 802). Mr. Barrick

described his panic attacks, noting shortness of breath, chest pains, feeling overwhelmed, and

crying. (*Id.*). Mr. Barrick endorsed anger issues, stating that he yells often and resorts to breaking or

throwing his own things when angry. (*Id.*). Mr. Barrick also described oppositional behaviors,

including feeling defensive and yelling back at others who yell at him. (*Id.*). He endorsed staying

home often because he feels people are watching and judging him for his criminal past or that he

2

will be sent back to jail. (*Id.*). Ms. Butler diagnosed Mr. Barrick with post-traumatic stress disorder (PTSD), intermittent explosive disorder, and dysthymic disorder. (Tr. 804). She recommended medication management and counseling. (Tr. 805).

On June 7, 2019, Mr. Barrick presented to the emergency department after a syncopal episode. (Tr. 541-42). He reported severe left flank pain, nausea, feeling anxious, and hyperventilating prior to losing consciousness. (Tr. 545).

On June 11, 2019, Mr. Barrick met with Shari Borgeson, LPCC-S, of Alternative Paths for counseling. (Tr. 788). Mr. Barrick felt he needed counseling for his anger issues and reported a tendency to throw things and get easily frustrated. (Tr. 789).

On July 24, 2019, Mr. Barrick met with Ryan Bednar, PMHNP-BC, at Alternative Paths for an assessment and medication management. (Tr. 465). Mr. Barrick reported he cannot sit still, concentrate, or complete tasks. (*Id.*). He reported being fired not long ago for not completing tasks. (*Id.*). Mr. Barrick also complained of always wanting to move, being unable to sit still, and becoming irritable quickly. (Tr. 466). Mr. Barrick presented as polite but agitated. (Tr. 470). He exhibited an anxious and depressed mood, abnormal cognition (impaired calculations and impaired abstraction), fair attention and concentration (changing task frequently, requires redirection, verbally intrusive, constant talking), and fair judgment and insight. (*Id.*). Otherwise, he was logical, coherent, concrete, and goal directed. (*Id.*). Nurse Bednar prescribed hydroxyzine for anxiety and stress, Seroquel for sleep, and lamotrigine. (Tr. 471, 473). Mr. Barrick did not return to Nurse Bednar. (Tr. 771).

### III.    MEDICAL OPINIONS

On November 29, 2017, in relation to a prior application for benefits, Gordon Harris, Ph.D., performed a consultative psychological evaluation. (Tr. 244-249). Mental status examination revealed normal speech, a euthymic mood with appropriate affect, logical and coherent thought processes without paranoia or delusion, and fair abstract thinking. (Tr. 246-47). His concentration and attention appeared to be adequate during psychological testing, and his pace "did not seem outside the norm." (Tr. 247). Mr. Barrick also appeared to have limited insight and his judgment was poor. (*Id.*). On testing, Mr. Barrick scored significantly lower in verbal comprehension and working memory, placing him in the borderline range. (*Id.*). Memory skills were deemed borderline to mildly deficient. (*Id.*).

Dr. Harris concluded Mr. Barrick's memory is variable such that he may have difficulty remembering directions at times, particularly if presented verbally. (Tr. 248). He opined Mr. Barrick's ability to carry out directions is adequate, so long as he remembers the directions. (*Id.*). Based on Mr. Barrick's pace during testing, Dr. Harris determined Mr. Barrick could complete routine perceptual tasks quickly and accurately. (*Id.*). Dr. Harris also stated Mr. Barrick's self-reported problems with anger management "may prove to be a problem for him in relating to both supervisors and coworkers in a work environment." (*Id.*). Lastly, due to Mr. Barrick's mood issues, he may experience some difficulty responding appropriately to work pressures. (*Id.*).

On August 15, 2019, Mr. Barrick underwent another consultative psychological examination, performed by James N. Spindler, M.S. (Tr. 476-82). Mr. Spindler noted that Mr. Barrick "seemed easily distracted and it was occasionally necessary to repeat questions." (Tr. 479). Mr. Barrick reported avoiding conflict with others as much as he can because he feels as though he

is having a panic attack. (*Id.*). Based on clinical observation, Mr. Spindler determined Mr. Barrick

functioned in the borderline range of intelligence and has PTSD, an anxiety disorder, attention-

deficit/hyperactivity disorder, and antisocial personality disorder. (Tr. 480). As to Mr. Barrick's

abilities to understand, remember, and carry out instructions, Mr. Spindler opined it "seems

unlikely that [Mr. Barrick] would have the ability to make effective use of whatever vocational skills

he might otherwise have." (Tr. 481). Because he was easily distracted and needed questions

repeated, Mr. Spindler opined Mr. Barrick would not be capable of "sustaining a working pace and

maintaining a level of attention and concentration that would be sufficient for most job settings."

(*Id.*). Based on Mr. Barrick's reports of having problems getting along with others, being fired, and

receiving poor job performance ratings, Mr. Spindler determined Mr. Barrick could not respond

appropriately to supervision and to coworkers in the work setting. (Tr. 482). Lastly, Mr. Spindler

felt Mr. Barrick would have significant problems responding appropriately to work pressures. (*Id.*).

Jaime Lai, Psy.D., a state agency psychological consultant, reviewed Mr. Barrick's medical

records and the medical opinions from Dr. Harris and Mr. Spindler. Dr. Lai determined Mr.

Barrick was moderately limited in the following abilities:

- carry out detailed instructions,
- maintain attention and concentration for extended periods of time,
- work in coordination with or in proximity to others without being distracted by them,
- complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods,
- interact appropriately with the general public,
- accept instructions and respond appropriately to criticism from supervisors,
- get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and
- respond appropriately to changes in the work setting.

(Tr. 68-70).

In light of these limitations, Dr. Lai determined Mr. Barrick was moderately limited in his abilities to interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself; and opined he can carry out one- to four-step short cycle tasks that are relatively static in nature and do not require high production or strict time demands, can interact occasionally with coworkers and supervisors on a superficial basis, can work in a public setting where he does not have direct customer service duties, and would require major changes to be introduced gradually to allow time to adjust to the new expectations. (Tr. 64, 69-70). Dr. Lai also stated that Mr. Barrick "would do best working in a separate area from coworkers and having only brief conventional transactions with them," and that he should not be expected to engage in collaborative tasks or be subjected to close over-the-shoulder supervisor scrutiny. (Tr. 69). On reconsideration, Bonnie Katz, Ph.D., reviewed the records and offered the same opined limitations. (Tr. 85, 92).

## IV. OTHER RELEVANT EVIDENCE

In July 2019, Mr. Barrick completed an Adult Function Report. (Tr. 182-89). Relevant to his mental impairments and limitations, Mr. Barrick reported being unable to stay focused and being slower than others. (Tr. 182). He described issues with sleep and nightmares. (Tr. 183). Mr. Barrick's wife reminds him to take his medications. (Tr. 184). He can perform household chores but does so in "little bits at a time with breaks." (*Id.*). Mr. Barrick attends church weekly and is able to spend time with others. (Tr. 186). He is unable to pay attention for any extended period of time and is unable to follow written instructions but can follow spoken instructions "ok." (Tr. 187). Mr.

Barrick can get along with others, including authority figures, but does not get along with anyone who yells at him. (Tr. 188). He thinks other people are "out to get" him. (*Id.*).

V.    ADMINISTRATIVE HEARING

The following summarizes the testimony of Mr. Barrick and VE Toni McFarland, presented during the hearing before the ALJ.

Mr. Barrick has a high school diploma but took all his courses with one teacher while serving time in juvenile detention. (Tr. 40, 240). He struggles with reading comprehension. (*Id.*). His wife reads his mail to him, including letters from the Social Security Administration. (*Id.*).

Mr. Barrick last worked in early 2019 but was fired because he was unable to keep up with production. (Tr. 37). He has difficulty interacting with people who yell at him. He reports that when this happens, he gets an attitude and yells back. (*Id.*). This happens in his everyday life, such as with his wife and family, and at work. (*Id.*). Mr. Barrick does not have many friends. (Tr. 38). He stays at home because he experiences paranoid thoughts, like everyone is judging him and will try to get him in trouble, (*Id.*). He rarely leaves his home unless his wife or sister is with him. (*Id.*). Mr. Barrick has anxiety and has lost consciousness during a panic attack. (Tr. 39). He feels claustrophobic being around a lot of people. (*Id.*). When Mr. Barrick is under stress, he tends to act out by destroying his own things. (Tr. 41). This happens about two or three times a week. (Tr. 42).

The VE then testified. The ALJ asked if a hypothetical individual of Mr. Barrick's age and education could perform work if limited to light exertion work with the following additional limitations: no climbing ladders, ropes, or scaffolds; occasionally climbing ramps and stairs, occasionally balance, stoop, kneel, crouch, and crawl; occasionally reach overhead without

limitation to lateral reaching; no concentrated exposure to temperature extremes, humidity, environmental pollutants, vibration, or high background noise, as in a factory setting; no exposure to hazards; limited to performing simple, routine tasks in a low stress environment (no fast pace, strict quotas, or frequent duty changes); superficial interpersonal interactions with coworkers and supervisors (no arbitration, negotiation, or confrontation); and no interaction with the public as a job requirement. (Tr. 46-47). The VE clarified the ALJ's hypothetical to reflect occasional superficial interaction with supervisors and co-workers and determined there were positions such a hypothetical individual could perform, including routing clerk (DOT 222.687-022, approximately 60,000 jobs nationally), folding machine operator (DOT 208.685-014, approximately 42,000 jobs nationally), and router (DOT 222.587-038, 150,000 jobs nationally), all of which are light exertion level positions classified as SVP 2. (Tr. 47-48). The VE also testified that employers tolerate an employee being off task no more than fifteen percent of the workday and absent from work no more than one day a month. (Tr. 50).

Lastly, the VE testified a person who is unable to get along with coworkers without causing undue disruptions in the workplace due to a medically determinable impairment could not maintain competitive employment. (Tr. 51-52).

## THE ALJ'S DECISION

The ALJ's decision, dated August 5, 2020, included the following findings of fact and conclusions of law:

1. The claimant has not engaged in substantial gainful activity since April 12, 2019, the application date (20 CFR 416.971 *et seq.*).

2. The claimant has the following severe impairments: intermittent explosive/antisocial personality disorder, borderline intellectual functioning, anxiety with post-traumatic stress, history of attention deficit hyperactivity

disorder, obesity, degenerative changes of the spine, arthralgia of shoulders, asthma, seizures with headaches, and essential hypertension (20 CFR 416.920(c)).

3.      The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925, and 416.926).

4.      After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity (20 CFR 416.945) to perform light work as defined in 20 CFR 416.967(b) except for no climbing of ladders, ropes or scaffolds; occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching and crawling; occasional overhead reaching without limitation to lateral reaching; no concentrated exposure to temperature extremes, humidity, environmental pollutants, vibration, or high background noise; no exposure to hazards (heights, machinery, commercial driving); and mental health limitation that he perform simple, routine tasks in a low stress environment (no fast pace, strict quotas or frequent duty changes) involving superficial interpersonal interactions with coworkers and supervisors (no arbitration, negotiation or confrontation), and no interaction with the public as a job requirement (20 CFR 416.969a).

5.      The claimant has no past relevant work (20 CFR 416.965).

6.      The claimant was born on December 12, 1981, and was 37 years old, which is defined as a younger individual age 18-49, on the date the application as filed (20 CFR 416.963).

7.      The claimant has at least a high school education (20 CFR 416.964).

8.      Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9.      Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969, and 416.969a).

10.     The claimant has not been under a disability, as defined in the Social Security Act, since April 12, 2019, the date the application was filed (20 CFR 416.920(g)).

(Tr. 14-28).

STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)).

In determining whether the Commissioner's findings are supported by substantial evidence, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). This is so because there is a "zone of choice" within which the Commissioner can act, without fear of court interference. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

However, "a substantiality of evidence evaluation does not permit a selective reading of the record. Substantiality of evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of

10

evidence must take into account whatever in the record fairly detracts from its weight." *Brooks v. Comm'r of Social Security*, 531 F. App'x 636, 641 (6th Cir. 2013) (cleaned up).

A district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (internal quotations omitted). Even if substantial evidence supports the ALJ's decision, the court must overturn when an agency does not observe its own procedures and thereby prejudices or deprives the claimant of substantial rights. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546–47 (6th Cir. 2004).

## STANDARD FOR DISABILITY

Eligibility for benefits is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process—found at 20 C.F.R. § 416.920—to determine if a claimant is disabled:

1.  Was claimant engaged in a substantial gainful activity?

2.  Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3.  Does the severe impairment meet one of the listed impairments?

4.  What is claimant's residual functional capacity and can claimant perform past relevant work?

11

5.     Can claimant do any other work considering her residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters,* 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The ALJ considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is she determined to be disabled. 20 C.F.R. § 416.920(b)-(f); *see also Walters*, 127 F.3d at 529.

DISCUSSION

Mr. Barrick takes issue with the ALJ's evaluation of Mr. Spindler's medical opinion, the opinions of the state agency psychological consultants, and the RFC assessment. (Pl.'s Br., ECF #11, PageID 871-75). Mr. Barrick argues that the ALJ did not substantively analyze Mr. Spindler's opinion, "instead leaving to the imagination what he found inconsistent with it." (*Id.* at 874). Mr. Barrick further claims the ALJ relied on some evidence but ignored other evidence without offering some rationale for his decision, leading to an alleged failure to build an accurate and logical bridge between the evidence and the ALJ's conclusions. (*Id.*). Mr. Barrick also argues the ALJ erred by failing to address or discuss why he did not adopt certain of the state agency psychological consultants' opined limitations, including that Mr. Barrick work in a separate area and that major changes be gradually introduced to allow time to adjust. (*Id.* at 875-876).

The Commissioner counters that the ALJ was not obligated to evaluate Mr. Spindler's report pursuant to 20 C.F.R. § 416.920c because he did not provide medical opinions, the ALJ determined Mr. Spindler's findings were less persuasive based on objective medical evidence, the ALJ's RFC assessment accommodated many of Mr. Spindler's findings, some of Mr. Spindler's statements concerned whether Mr. Barrick was "able to work," an issue reserved to the Commissioner, and substantial evidence supports the ALJ's assessment of Mr. Barrick's RFC (Comm'r's Br., ECF #14, PageID 887-90).

In reply, Mr. Barrick asserts that Mr. Spindler's assessment is a medical opinion, and that the ALJ evaluated that opinion in the same manner he evaluated the other medical sources; the Court reviews the Commissioner's decision based on the rationale provided. (Pl.'s Reply Br., ECF #15, PageID 898). Moreover, Mr. Barrick argues that the caselaw the Commissioner cites does not support its assertions. (*Id.* at 899-900).

Under 20 C.F.R. § 416.920c, for claims filed on or after March 27, 2017, the ALJ is to articulate "how persuasive [he] find[s] all of the medical opinions and all of the prior administrative medical findings in [the] case record." 20 C.F.R. § 416.920c(b). The ALJ is not required to defer to or give any specific evidentiary weight to a medical opinion, and is not required to give a treating source controlling weight. *Id.* at § 416.920c(a). Instead, the ALJ must articulate the consideration given to the medical opinions in the record, grounded in the two

"most important factors"—supportability[1] and consistency.[2] *Id.* at § 416.920c(b). While the ALJ must explain how those factors were considered, the ALJ need not specifically use the terms "supportability" or "consistency" in his analysis. *Hardy v. Comm'r of Soc. Sec.*, No. 2:20-cv-4097, 2021 WL 4059310, *2 (S.D. Ohio Sept. 7, 2021).

While these regulations are less demanding than the former rules governing the evaluation of medical source opinions, "they still require that the ALJ provide a coherent explanation of [his] reasoning." *Lester v. Saul*, No. 20-01364, 2020 WL 8093313, at *14 (N.D. Ohio Dec. 11, 2020), *report and recommendation adopted*, 2021 WL 119287 (N.D. Ohio Jan. 13, 2021). The new regulations "set forth a 'minimum level of articulation' to be provided in determinations and decisions, in order to 'provide sufficient rationale for a reviewing adjudicator or court.'" *Warren I. v. Comm'r of Soc. Sec.*, No. 20-495, 2021 WL 860506, at *8 (N.D.N.Y. Mar. 8, 2021) (quoting 82 Fed. Reg. 5844-01 (2017)). An "ALJ's failure . . . to meet these minimum levels of articulation frustrates [the] court's ability to determine whether [the claimant's] disability determination was supported by substantial evidence." *Vaughn v. Comm'r of Soc. Sec.*, No. 20-1119, 2021 WL 3056108, at *11 (W.D. Tenn. July 20, 2021).

The ALJ is responsible to form an RFC appropriate to the claimant's abilities, supported by the ALJ's evaluation of the medical evidence. *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th

---

[1] "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his medical opinion(s) or prior administrative medical finding(s), the more persuasive the opinion(s) and finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).

[2] "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the opinion(s) and finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

14

Cir. 2004). The RFC is to be an assessment of the claimant's remaining capacity for work, once

the claimant's limitations have been considered. *Id.* at 632. An ALJ is to consider all evidence in

the record to evaluate the limiting effects of the claimant's symptoms, including daily activities, the

nature of the alleged symptoms, efforts made to alleviate the symptoms, the type and efficacy of

treatments, and other factors regarding the claimant's functional limitations. *Avery v. Comm'r of*

*Soc. Sec.*, No. 1:19-CV-1963, 2020 WL 2496917, at *11 (N.D. Ohio May 14, 2020). The ALJ also

must determine the "extent to which the symptoms can reasonably be accepted as consistent with

the objective medical and other evidence in the individual's record." *Id.*

The ALJ is not required to adopt all opined limitations into the RFC, even if he finds the

opinion persuasive. *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 269 (6th Cir. 2015). However,

the ALJ must provide an explanation that allows the Court to conduct a meaningful review of the

decision. *See Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) (noting that an

ALJ's decision must include a discussion of findings and conclusions, and the reasons or basis for

those conclusions, on all material issues of fact, law, or discretion presented on the record); *Allen v.*

*Astrue*, No. 5:11–cv–95, 2012 WL 1142480, at *8 (N.D. Ohio Apr. 4, 2012) (remanding where

"the ALJ failed to properly articulate the RFC calculation," explaining that the Court was "unable

to trace the path of the ALJ's reasoning").

I.   **Mr. Spindler's consultative examination is a medical opinion.**

As a threshold matter, Mr. Spindler's assessment is a medical opinion. As defined in the

regulations, a medical opinion is a statement from a medical source about what an individual can

still do despite his impairments and whether the individual has one or more impairment-related

limitations or restrictions in, as relevant here, an individual's ability to perform mental demands of

work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, coworkers, or work pressures in a work setting. 20 C.F.R. § 416.913(a)(2). Mr. Spindler's psychological evaluation included a functional assessment, summarized above, where he offered opinions as to what he felt Mr. Barrick could still do and could not do.

The Commissioner asserts that *Crouch v. Sec. of Health & Human Servs.*, 909 F.2d 852 (6th Cir. 1990), and *Caldwell v. Comm'r of Soc. Sec.*, No. 3:19 CV 1909, 2020 WL 7684877 (N.D. Ohio Aug. 17, 2020), *report and recommendation adopted*, 2020 WL 7090025 (N.D. Ohio Dec. 4, 2020), support its position. (*See* Comm'r's Br., ECF #14, PageID 889). I find otherwise.

In *Crouch,* the Sixth Circuit considered whether a passage in a letter from the claimant's treating physician was substantial evidence of disabling pain. 909 F.2d at 856. It determined the evidence cited by the physician was equivocal, not substantial evidence of disabling pain. *Id.* The court did not conclude the physician's statement was not a medical opinion, or that the ALJ was not obligated to evaluate it pursuant to the regulations.

In *Caldwell,* the ALJ rejected as speculative a physician's opinion that the claimant "may need additional breaks." 2020 WL 7684877, at *12. The court agreed the physician's use of the equivocal term "may" supported the ALJ's rationale for rejecting the term as speculative and found this was a valid reason to discount the opinion. *Id.*

Here, the ALJ did not characterize Mr. Spindler's assessment as equivocal or speculative. (*See* Tr. 26). As Mr. Barrick correctly asserts, a reviewing court is not to accept post-hoc rationalizations in assessing the decision of an administrative agency and "must judge its propriety

16

solely by the grounds invoked by the agency." *Williams v. Comm'r of Soc. Sec.*, 227 Fed. App'x. 463, 464 (6th Cir. 2007).

The Commissioner next argues several of Mr. Spindler's statements were neither inherently valuable nor persuasive because they concerned whether Mr. Barrick was "able to work," an issue reserved to the ALJ. (Comm'r Br., ECF #14, PageID 890). Specifically, the Commissioner takes issue with the statements that Mr. Barrick could likely not make use of whatever vocational skills he might have due to his mental impairments and that he lacked the ability to maintain sufficient attention and concentration in most job settings. *Id.*

For evidence that is inherently neither valuable nor persuasive, such as "statements that you are or are not disabled, blind, able to work, or able to perform regular or continuing work," the ALJ is not required to provide any analysis about how he considered such evidence. 20 C.F.R. § 416.920b(c)(3)(i). I find the Commissioner's argument unpersuasive because even if those two statements concern issues reserved to the ALJ (and therefore allowing the ALJ to reject the opinions), the ALJ is not entitled to ignore the remaining opinions offered by the medical source. *See Bass v. McMahon,* 499 F.3d 506, 511 (6th Cir. 2007).

## II.     The ALJ erred in his evaluation of the medical opinions regarding Mr. Barrick's mental health.

Relevant to Mr. Barrick's mental health impairments, the ALJ summarized the medical record, including the reports and opinions of the consultative examiners (Mr. Spindler and Dr. Harris), and found the evidence shows Mr. Barrick experienced limiting signs and symptoms associated with his impairments. (Tr. 19-24). Thereafter, the ALJ stated:

> He has a history of special education and his index scores on the WSM-IV that were in the borderline to mildly deficient range overall. He sought treatment for reported psychological symptoms that included depressed mood, a history of suicide attempts,

17

> panic attacks, difficulty controlling his anger, a tendency for verbal and physical aggression, a history of abuse, difficulty concentrating, and nightmares. Significant associated clinical findings included fair abstract thinking, inability to perform serial seven tasks, an anxious and depressed mood, an anxious affect, an agitated presentation, impaired eye contact, concrete and racing thoughts, persecutory delusions, circumstantial speech, impaired concentration, impaired insight and judgment.

(Tr. 24) (internal citations omitted). The ALJ weighed this against evidence that Mr. Barrick was pleasant, polite, and cooperative, was able to complete standardized testing, had a full-scale IQ score that placed him in the low-average range, and clinical findings revealing normal mood, affect, memory, behavior, and judgment. (Tr. 25). The ALJ determined functional limitations were warranted, explaining as follows:

> Due to his history of special education, noted deficits in memory, and findings of impaired concentration, he should perform no more than simple, routine tasks. To avoid exacerbating his symptoms with stress, he should perform tasks in a low stress environment, meaning no fast pace, strict quotas, or frequent duty changes. Further, to account for his noted issues with anger management, evidence of impaired eye contact, and his mood/affect abnormalities, he should have only superficial interpersonal interactions with coworkers and supervisors, meaning no arbitration, negotiation, or confrontation, and no interaction with the public as a job requirement.

(Tr. 25). Thereafter, the ALJ offered the following evaluation of the mental health-related medical opinions:

> The State agency psychological consultants, Jaime Lai, PsyD and Bonnie Katz, PhD, assessed that the claimant retained the ability to carry out one-to-four-step short cycle tasks that are relatively static in nature and do not require high production or strict time demands. He would perform better in a separate area from coworkers with only brief conventional transactions with them, where he does not have direct customer service duties, and only occasionally interact[s] with coworkers and supervisors on a superficial basis (i.e. no collaborative tasks or close over-the-shoulder scrutiny). Finally, major changes would need to be gradually introduced to allow time to adjust to new expectations. The undersigned finds this assessment to be persuasive overall. It accounts for impairments in concentration, intermittent eye contact, mood/affect abnormalities, and the need to avoid exacerbating his symptoms with stress. However, due to evidence of WSM-IV scores in the borderline to mildly deficient

range overall, he should perform no more than simple, routine tasks. Further, due to his issues with anger management, he should have no more than superficial interaction with coworkers and supervisors, meaning no arbitration, negotiation, or confrontation, and no interaction with the public as a job requirement. However, a greater level of limitation is not supported by evidence that includes a full-scale IQ score that was in the low average range, evidence of normal memory, behavior, and judgment, the ability to complete standardized testing, a logical and coherent thought process, normal mood and/or affect, and a pleasant, polite, and cooperative thought process. [(Tr. 243-249, 431-34, 463-74, 475-483, 484-93, 496-99, 541-46, 586-91, 597-603, 774-80, 793-806)].[3] Accordingly, the assessments of Mr. Spindler and Dr. Harris are less persuasive as the level of limitation alleged is not altogether consistent with these findings.

(Tr. 26).

A.      **James N. Spindler, M.S.**

The Commissioner argues generally that the ALJ determined the opinion of Mr. Spindler was less persuasive "based on the ALJ's review of the objective evidence," and points to the evidence the ALJ referred to in support of his conclusion that no greater limitations were warranted. (Comm'r's Br., ECF #14, PageID 889-90). Mr. Barrick responds that the cited evidence does not undermine the specific limitations Mr. Spindler identified. (Pl.'s Reply Br., ECF #15, PageID 900-01).

Here, while the ALJ did not articulate how he considered the supportability of Mr. Spindler's opinion, the ALJ did provide some evidence underscoring his decision finding Mr. Spindler's opinion less persuasive, including a full-scale IQ score that was in the low average range, the ability to complete standardized testing, a logical and coherent thought process, and evidence of normal memory, behavior, judgment, mood, and affect, and a pleasant, polite, and cooperative

---

[3]      Tr. 484-93 and 496-99 refer to the same treatment note dated October 21, 2019. Tr. 463-74 and 774-80 refer to the same treatment note dated July 24, 2019.

demeanor. But it is not immediately discernible how any of this information undercuts Mr. Spindler's assessment.

The state agency, Opportunities for Ohioans with Disability, referred Mr. Barrick to Mr. Spindler for a consultative examination but did not request any psychological testing. (Tr. 480). However, Mr. Spindler noted Mr. Barrick's judgment was adequate, speech was normal, and his thought associations were adequate and without fragmentation of thought or flight of ideas. (Tr. 479, 481). Mr. Barrick described occasionally feeling depressed, but Mr. Spindler found he did not exhibit a depressed mood at the time of the examination. (Tr. 479). Mr. Barrick could recall five of five objects after five minutes and correctly recited four digits forward and three backward. (*Id.*). Finally, Mr. Spindler also described Mr. Barrick as cooperative during the examination. (Tr. 478). Despite these findings, Mr. Spindler opined Mr. Barrick would, most relevantly, have significant problems responding appropriately to routine work pressures, and based on past work experiences, would be unable to respond appropriately to supervision and to coworkers in a work setting. (*See* Tr. 482) ("[Mr. Barrick] reports that when he was employed, he usually received poor job performance ratings and indicated that he was fired from most of the jobs he held and said he has always had problems getting along with others. There is no basis for believing that his experience would be any different now if he were employed today.").

The ALJ did not explain how those normal findings, contained in other medical records and in Mr. Spindler's own opinion, detract from the persuasiveness of Mr. Spindler's opinion. As a result, I conclude the ALJ's reasoning does not build an accurate and logical bridge between the evidence and the result. *Fleischer*, 774 F. Supp. 2d at 877.

20

The Commissioner asserts that substantial evidence supports the ALJ's RFC assessment. This does not cure the error because even if substantial evidence supported the ALJ's findings, "'substantial evidence alone does not excuse non-compliance with [the regulations] as harmless error.'" *Ledsome v. Comm'r of Soc. Sec.*, 5:20-CV-02495, 2021 WL 6101427, *7 (N.D. Ohio Dec. 8, 2021), *report and recommendation adopted*, 2021 WL 6086452 (N.D. Ohio Dec. 23, 2021) (quoting *Hardy v. Comm'r of Soc. Sec.*, No: 20-10918, 554 F. Supp. 3d 900, 908 (E.D. Mich. Aug. 13, 2021)).

To be sure, a court may conclude an ALJ's procedural error was harmless in some circumstances, including for example, when an opinion is so patently deficient that the Commissioner could not possibly credit it, the Commissioner adopts a treating source opinion or makes findings consistent with the opinion, or the Commissioner has met the goal of the regulations even without complying with its terms. *Wilson*, 378 F.3d at 547; *see also Hardy*, 554 F. Supp. 3d at 909 (applying *Wilson's* harmless error doctrine to an ALJ's failure to evaluate medical opinions properly under 20 C.F.R. § 404.1520c(b)); *accord Moulden v. Kijakazi*, No. 1:20-CV-00152, 2022 WL 178588, *7 (W.D. Ky. Jan. 19, 2022).

The Commissioner claims the ALJ did incorporate limitations that address Mr. Spindler's opinion, including restrictions to simple, routine tasks, superficial interactions with coworkers and supervisors, and no interaction with the public. (Comm'r's Br., ECF #14, PageID 890). This also does not cure the ALJ's error. *See Beery v. Comm'r of Soc. Sec.*, 819 Fed. App'x 405, 408 (6th Cir. 2020) ("We will treat an ALJ's failure to articulate her reasons for the weight she assigned to a medical source opinion as harmless error if the ALJ adopted the opinion or made findings consistent with the opinion.") (citing *Wilson*, 378 F.3d at 547). Mr. Spindler's assessment was that Mr. Barrick would be unable to respond appropriately to supervisions and coworkers. The ALJ's

21

incorporated limitations restricting Mr. Barrick to superficial interactions with supervisors and coworkers are not consistent with Mr. Spindler's findings. The Commissioner does not argue, and the record does not reflect, that the opinion was so patently deficient that the ALJ could not possibly credit it. Finally, the ALJ did not meet the goal of the regulations, which shares the old regulation's goals:

> to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied and to ensure that the ALJ's decision permits meaningful review of the ALJ's application of the rule.

*Wilson,* 378 F.3d at 544; *see also Burba v. Comm'r of Soc. Sec.,* No. 2:18-cv-725, 2020 WL 5792621, *4 (N.D. Ohio Sept. 29, 2020). The ALJ did not meet the goal of the regulations; the opinion does not offer any justifiable reasoning for finding Mr. Spindler's medical opinion less persuasive, nor does it permit meaningful review of the ALJ's application of the regulations. In light of the foregoing, the ALJ's error was not harmless and requires remand.

**B.      Jaime Lai, Psy.D., and Bonnie Katz, Ph.D.**

Mr. Barrick claims the ALJ erred when he did not address or discuss certain of the state agency psychological consultants' limitations, including that Mr. Barrick work in a separate area and the need for major changes to be gradually introduced to allow time to adjust. (Pl.'s Br., ECF #11, PageID 875-76). The Commissioner counters that the ALJ considered the persuasiveness of the opinions in light of their consistency with the record, added additional restrictions, and otherwise discounted the findings because of the evidence of record did not support greater limitations. (Comm'r's Br., ECF #14, PageID 891). Mr. Barrick replies that no other opinion supports the limitations the ALJ found warranted. (Pl.'s Reply Br., ECF #15, PageID 902).

As with the evaluation of Mr. Spindler's medical opinion, I find the ALJ did not articulate how he considered the supportability of the state agency psychological consultants' opinions. And despite the Commissioner assertion otherwise, this error was not harmless. First, the Commissioner notes that the state agency psychological consultants determined Mr. Barrick would do best in a separate area away from coworkers, an important distinction because the ALJ is tasked with assessing an individual's RFC, *i.e.*, the most an individual can do despite his impairments, not with creating an optimal work setting. (Comm'r's Br., ECF #14, PageID 892). Second, the Commissioner argues the ALJ stated further limitations were not warranted and pointed to evidence showing normal judgment and a logical and coherent thought process. (*Id.* at PageID 893).

An ALJ's RFC is to reflect the most an individual can do despite his impairments, not the optimized or best conditions for an individual's work. *See Horinek v. Saul,* No. 1:19-cv-2141, 2020 WL 4340987, *9 (N.D. Ohio Jul. 7, 2020) ("[T]he ALJ was not required to create an optimal work setting for Plaintiff. 'Optimal conditions . . . are not necessary ones.'") (citing *Jakubiak v. Berryhill,* 337 F. Supp. 3d 80, 85-86 (D. Mass. 2018)), *report and recommendation adopted,* 2021 WL 1571659 (N.D. Ohio Apr. 22, 2021). Here, the ALJ's identification of instances of normal judgment and a logical and coherent thought process do not sufficiently explain the ALJ's determination that further limitations were unwarranted.

The ALJ found the state agency consultant's opinion overall persuasive in part because it accounted for "the need to avoid exacerbating his symptoms with stress." The ALJ's RFC provided a limitation specifically to address this concern. (*See* Tr. 25) ("To avoid exacerbating his symptoms with stress, he should perform tasks in a low stress environment, meaning no fast pace, strict

quotas, or frequent duty changes."). Dr. Lai stated: "[Mr. Barrick's] ability to handle stress and pressure in the work place would be reduced, but adequate to perform duties that are fairly static in nature and without high production or strict time demands. [Mr. Barrick] would need major changes to be gradually introduced to allow time to adjust to the new expectations." (Tr. 70). Both opined limitations are based on Mr. Barrick's reduced capacity to tolerate stress. Without additional explanation, it is unclear why the ALJ adopted one limitation in light of Mr. Barrick's stress tolerance but did not adopt another limitation consistent with accommodating stress tolerance. Thus, the ALJ's error in failing to evaluate the medical opinions in accordance with regulations is not harmless and requires remand.

In light of the foregoing, I recommend the District Court reverse the decision and remand the matter for the ALJ to re-evaluate the medical opinions and reassess Mr. Barrick's RFC in accordance with the regulations.

### CONCLUSION AND RECOMMENDATION

Following review of the arguments presented, the record, and the applicable law, I recommend the District Court **REVERSE** the Commissioner's decision denying supplemental security income and **REMAND** this matter for proceedings consistent with this recommendation.

Dated: July 29, 2022

DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE

OBJECTIONS, REVIEW, AND APPEAL

Within 14 days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the Magistrate Judge. *See* Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1); Local Civ. R. 72.3(b). Properly asserted objections shall be reviewed de novo by the assigned district judge.

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal, either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the Report and Recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the Report and Recommendation; "a general objection has the same effect as would a failure to object." *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the Magistrate Judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, at *2 (W.D. Ky. June 15, 2018) (quoting *Howard*, 932 F.2d at 509). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).